IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| ASSOCIATION OF APARTMENT OWNERS OF POMAIKAI, a Hawaii nonprofit corporation, by its Board of Directors,<br><br>        Plaintiff,<br><br>    vs.<br><br>MAUREEN MCDONOUGH.<br><br>        Defendant.<br>_____<br>MAUREEN MCDONOUGH,<br><br>        Counterclaimant,<br><br>    vs.<br><br>ASSOCIATION OF APARTMENT OWNERS OF POMAIKAI, a Hawaii nonprofit corporation, by its Board of Directors,<br><br>        Counterdefendant. | CIVIL NO. 13-00254 DKW KSC<br><br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

# ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

## INTRODUCTION

Before the Court is Defendant Maureen McDonough's Motion to Dismiss Complaint for Declaratory and Injunctive Relief ("Motion"), filed on November 8, 2013. Plaintiff Association of Apartment Owners of Pomaikai ("Plaintiff" or "AOAO") opposed the Motion. *Amicus Curiae* William D. Hoshijo, as Executive Director of the Hawai'i Civil Rights Commission, filed a brief in support of the Motion. Dkt. No. 40. The Court held a hearing on the Motion on December 27, 2013. After careful consideration of the supporting and opposing memoranda, the arguments of counsel, and the relevant legal authority, the Motion is GRANTED.

## BACKGROUND

The parties dispute whether Defendant, an owner of a unit in the AOAO's condominium project, is entitled to an exception to the AOAO's rule forbidding pets. Several of the AOAO's governing documents generally prohibit pets, but certain exceptions apply:

> (e)   No animals, livestock, or poultry of any kind shall be raised, bred, or kept in any Unit Ownership or in the common

> elements or limited common element or limited common elements, except a visually handicapped person may have one duly certified seeing eye dog and a hearing impaired person may have one duly certified signal dog.
>
>     . . . .
>
> 5.     No pets are allowed at the Pomaika'i at anytime. Notwithstanding any provision to the contrary contained herein, guide dogs, signal dogs, and other animals required to assist a person with a disability (collectively referred to as "service animals") shall be permitted at the project subject to the following restrictions:
>
>> (a)     such service animals shall not be kept, bred, or used at the project for any commercial purpose;
>>
>> (b)     such service animals shall be permitted on the common elements provided that the animal is on a short leash and under the control of its owner at all times.
>
> Any animal causing a nuisance or unreasonable disturbance to any other occupant of the project shall be permanently removed upon notice given by the Board or the Managing Agent; provided that the notice shall give a reasonable time to replace the service animal, unless the Board determines that such animal poses an imminent serious threat of physical harm to other occupants at the project.

Complaint ¶¶ 11-12 (quoting Declaration of Horizontal Property Regime & 6/1/12 Apartment House Rules).

On January 7, 2013, Defendant sent a request to Plaintiff's managing agent asking that she be allowed to keep a dog in her unit. Defendant accompanied her request with a letter from her physician, Jutta Madjar-Galanto, M.D., stating: "Ms. Maureen McDonough is a patient under my care for which I have found it necessary for her health and wellbeing to have a 'companion dog.'" Complaint ¶ 16. Through its attorney, the AOAO responded in a January 14, 2013 letter, informing Defendant that she had not provided sufficient evidence to justify an exception to the "no pets" policy because she had neither established her "handicap" nor that her dog was "trained, certified, or ameliorates her disability." Complaint ¶ 17. The very next day, Defendant replied by providing copies of a State of Hawaii Person with a Disability Parking Placard, a State of Hawaii Disabled Persons Parking Identification Card, and an "E.S.A. Emotional Support Animal" Tag for "Mimi McDonough." Complaint ¶ 18. Defendant's January 15, 2013 correspondence also indicated that Defendant's doctor "in accordance with the HIPPA laws finds it against the law to disclose information about the diagnosis of my handicap." *Id.*

On January 17, 2013, Plaintiff once again responded, informing Defendant that her additional information was still insufficient because she refused

4

to disclose the nature of her disability and still had not established that her dog was certified, trained or ameliorated her disability.  Plaintiff also advised that while it was prepared to take steps to enforce its bylaws and house rules, it was willing to first consider additional evidence.  Complaint ¶¶ 19-20.  Receiving no response from Defendant, Plaintiff wrote again on January 28, 2013, informing Defendant that it was in the process of filing a lawsuit to resolve the matter and requesting her telephone number to arrange for service of a Complaint.  Complaint ¶ 21.  Counsel for Defendant responded in a February 5, 2013 letter, refusing to disclose the specific nature of Defendant's disability, but including a July 17, 2012 letter from Alan D. Thal, M.D., which references Defendant's "'physical disability' and 'depression' and that Defendant's dog helps to 'alleviate the depression and lack of appetite.'"  Complaint ¶ 22.  On March 19, 2013, Defendant's counsel supplemented this information with a letter from Defendant's physician, Tony N. Trpkovski.  Dr. Trpkovski's letter states that Defendant suffers from moderate to severe osteoarthritis of both hips and knees, which causes her chronic pain and, in turn, depression.  Dr. Trpkovski recommended a comfort pet to assist Defendant.  Complaint ¶ 24.

Plaintiff retained Robert C. Marvit, M.D. to review Defendant's claims and to determine whether she was entitled to an exception to the AOAO's "no pets" rule. Based on feedback received from Dr. Marvit, Plaintiff wrote to Defendant on March 22, 2013 with a list of seven questions. Defendant responded by letter dated April 5, 2013, informing the AOAO that she had provided all necessary information and would not provide anything further. Complaint ¶¶ 25-26.

On April 11, 2013, Defendant dual-filed a pre-complaint questionnaire ("PCQ") with the Department of Housing and Urban Development ("HUD") and the Hawaii Civil Rights Commission ("HCRC"), pursuant to Haw. Rev. Stat. ("HRS") § 368-11 and Haw. Admin. R. ("HAR") § 12-46-6, alleging that the AOAO engaged in unlawful housing practices by insisting that she provide detailed medical evidence before it would consider granting her request for a reasonable accommodation. Def.'s Ex. A (4/11/13 PCQ). The HCRC filed its "Charge of Real Property Transaction Discrimination" ("HCRC Charge") on May 24, 2013, based on its preliminary review of Defendant's PCQ. Def.'s Ex. B (5/24/13 HCRC Charge).

Plaintiff filed its Complaint for Declaratory and Injunctive Relief on May 20, 2013, and contends that the information and documents provided by Defendant do not establish that she is entitled to an exception to the "no pets" rule. Plaintiff seeks: (1) a declaratory judgment that Defendant is not entitled to an exception to Plaintiff's "no pets" rule and is in violation of the AOAO's bylaws and house rules (Count I); (2) a court order requiring Defendant to remove her dog from her unit (Count II); (3) a declaratory judgment regarding additional rights and duties of the parties pursuant to the Fair Housing Act, 42 U.S.C. §§ 3607, *et seq.* ("FHA"), and the Hawaii Discrimination in Real Property Act, HRS Chapter 515 (Count III); and (4) attorney's fees and costs pursuant to HRS § 541B-157 (Count IV). Plaintiff served the Complaint on Defendant on June 12, 2013. Defendant filed an Answer and Counterclaim on July 3, 2013.

On October 16, 2013, the HCRC dismissed Defendant's complaint without completing the administrative process pursuant to HRS § 515-9(b) and HAR § 12-46-11(a)(7)(D), and issued her a right to sue letter. Mem. in Supp. of Motion at 7-8.

Defendant now seeks an order dismissing Plaintiff's Complaint for lack of subject matter jurisdiction. She argues that Plaintiff does not have the

authority to opt out of the state administrative process initiated with the HCRC and that Plaintiff's Complaint is not properly before this Court.  Defendant also argues that the Court does not have jurisdiction to hear this case because there is no federal question and the AOAO lacks standing.

In its amicus brief, the HCRC asserts that Plaintiff's Complaint is premature and subverts the statutorily mandated administrative process set forth in HRS §368-13.  HCRC Br. at 2-3.  The HCRC further states that it was statutorily mandated to dismiss Defendant's HCRC complaint when she filed her Counterclaim in the instant case, alleging facts similar to those contained in the HCRC Charge, even though Defendant did not initiate the current action.  The HCRC contends that Plaintiff's declaratory action is aimed at bypassing the administrative procedure created by the state legislature to address unlawful housing discrimination, and that --

> [i]f Plaintiff is permitted to go forward with this action, every individual seeking redress for [an] alleged discriminatory housing practice could potentially be drawn into [a] federal lawsuit and be denied the benefits of the administrative processes created by the Hawaii Legislature and Congress to address charges of housing discrimination, i.e., a neutral fact-finding investigation and attempts at conciliation.  It will have a chilling effect on all Hawaiʻi housing complainants, particularly those individuals with a disability requiring a reasonable accommodation from their housing provider.

*Id.* at 4.

## STANDARD OF REVIEW

Defendant brings her motion pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(h)(3) based on lack of subject matter jurisdiction and, alternatively, pursuant to Rule 12(c) for judgment on the pleadings.  Rule 12(b)(1) states: "Every defense to a claim for relief in any pleading must be asserted in the responsive pleading if one is required.  But a party may assert the following defenses by motion: (1) lack of subject-matter jurisdiction."  "[T]he party asserting subject matter jurisdiction has the burden of proving its existence." *Robinson v. United States*, 586 F.3d 683, 685 (9th Cir. 2009).  The Court may consider evidence outside the pleadings and should not presume that the allegations of the complaint are true.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

Although alternatively filed by Defendant as a Rule 12(c) motion, when a party "raises an issue as to the court's subject matter jurisdiction on a motion for a judgment on the pleadings, the district judge will treat the motion as if it had been brought under Rule 12(b)(1)."  5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1367 (3d ed.2004); *see also Collins v.*

9

*Bolton*, 287 F. Supp. 393, 396 (N.D. Ill. 1968) ("Since defendant alleges only jurisdictional grounds for dismissal, the proper course is to consider the motion [for judgment on the pleadings] as one to dismiss for lack of subject matter jurisdiction."); *Engleson v. Burlington N. Railroad Co*., 1988 WL 332944, at *2 n.1 (D. Mont. 1988) ("Because the motion [for judgment on the pleadings] raises only subject matter jurisdictional issues, the court treats the motion as one requesting dismissal for lack of subject matter jurisdiction").

## **DISCUSSION**

Plaintiff alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, based on the FHA, which provides in pertinent part:

> <u>When a charge is filed under section 3610 of this title</u>, a complainant, a respondent, or an aggrieved person on whose behalf the complaint was filed, may elect to have the claims asserted in that charge decided in a civil action under subsection (o) of this section in lieu of a hearing under subsection (b) of this section.

42 U.S.C. § 3612(a) (emphasis added).   Here, however, no such Section 3610 charge has been filed.   Such a "charge" issues only after the administrative agency has investigated the complaint and completes a final investigative report, which did not occur in this matter.   *See* 42 U.S.C. § 3610(b); 42 U.S.C. § 3610(g)(2).

Notably, the HCRC's May 24, 2013 "Charge of Real Property Transaction Discrimination" is not the "charge" contemplated by Section 3612(a) that would trigger the propriety of a civil action. A Section 3612(a) charge has a specific meaning. As defined by Section 3610(g)(2)(B), such a charge "shall consist of a short and plain statement of the facts upon which the Secretary has found reasonable cause to believe that a discriminatory housing practice has occurred or is about to occur." In addition, such a charge "shall be based on the [administrative agency's] final investigative report." It is undisputed, however, that the HCRC did not complete its investigation before Plaintiff initiated this action, never issued a final investigative report, and therefore lacked the basis to make a "reasonable cause" determination. Indeed, the May 24, 2013 HCRC Charge contained none of these required elements. Accordingly, Plaintiff has not established that this Court or, in fact, any court, has jurisdiction to adjudicate the claims first initiated by Defendant with the HCRC on April 11, 2013. *See* Def.'s Ex. A (4/11/13 PCQ).

This district court was faced with a similar scenario in *Association of Apartment Owners of Hanohano Hale v. Lutley*, Civil No. 08-00065 DAE-BMK. In that matter, the plaintiff AOAO had denied defendant Lutley's request for a

companion animal based on an alleged disability.  Lutley first filed a complaint against her AOAO with HUD, which, in turn, notified the plaintiff AOAO of the existence of the complaint and that the HCRC would process it pursuant to Section 801(f) of the Fair Housing Act.  Shortly thereafter, the HCRC notified the plaintiff AOAO that it had assumed the investigation of Lutley's complaint.  On January 30, 2008, the HCRC issued a notice of finding of reasonable cause, and on February 14, 2008, conducted an unsuccessful conciliation conference.  Then, on February 15, 2008, the plaintiff AOAO filed a lawsuit against Lutley seeking a declaratory judgment that it was not obligated to accommodate her request for a companion animal.  *Lutley*, 8/25/08 Order at 2-4.

The district court in *Lutley* agreed with the HCRC and defendant that it did not have subject matter jurisdiction over the lawsuit because the FHA does not confer federal jurisdiction until a reasonable cause determination results in a formal charge by HUD.  As is the case here, the plaintiff AOAO in *Lutley* relied on 42 U.S.C. § 3612 as a basis for jurisdiction.  The district court held that "a condition precedent to a party filing a civil suit is HUD's issuance of a charge of discrimination.  There has been no such charge issued here." *Id*. at 9.

Here, Plaintiff likewise cites to 42 U.S.C. § 3612(a) to establish this Court's subject matter jurisdiction. *See* Complaint ¶ 1; Pl.'s Mem. in Opp. at 10 ("The Fair Housing Act confers federal court jurisdiction over this action."). This Court agrees with the district court's conclusion in *Lutley* that it is without subject matter jurisdiction to hear Plaintiff's case. Indeed, the HCRC proceedings in *Lutley* had advanced further in the administrative process, with both a finding of reasonable cause having been made and a conciliation conference having been attempted, than in the current matter. *See* 42 U.S.C. § 3612(b).

Additionally, it is clear that the AOAO has no authority to "opt out" of the administrative process initiated by Defendant.[1] Neither the FHA, HRS Chapter 515 nor HRS Chapter 368 allow a respondent to preempt or circumvent the HCRC administrative process by filing a civil action before the HCRC has concluded its administrative review. The Hawai'i Supreme Court has been clear

---

[1] Plaintiff argues that it has not opted out because it filed the instant lawsuit before it was served with the May 24, 2013 HCRC Charge. The Court notes, however, that Defendant filed the PCQ and initiated the HCRC administrative process on April 11, 2013 *before* this lawsuit was filed on May 20, 2013. Under the HCRC regulatory scheme, "a complaint is deemed filed if [the HCRC] receives from an individual a written statement sufficiently precise to identify the parties and describing with reasonable accuracy the action or practices alleged to be unlawful." HAR 12-46-6(b); *see also Hale v. Haw. Publ'n. Inc.*, 468 F.Supp.2d 1210, 1230 (D. Haw. 2006) (finding that the filing of the PCQ with HCRC constitutes the filing of a complaint for the purpose of calculating state filing deadlines). Defendant's PCQ meets this requirement. *See* Def's Ex. A.

that "to permit respondents as well as complainants to 'opt out' of the HCRC proceedings would be contrary to the clear intent of the legislature."  *SCI Mgmt. Corp. v. Sims*, 101 Hawaiʻi 438, 451-52, 71 P.3d 389, 402-03 (2003).

Plaintiff also relies on the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, to establish this Court's subject matter jurisdiction.  Complaint ¶ 8.  The Declaratory Judgment Act, however, "does not by itself confer federal subject-matter jurisdiction."  *Nationwide Mut. Ins. Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005); *see also Janakes v. U.S. Postal Serv.*, 768 F.2d 1091, 1093-94 (9th Cir. 1985) ("The use of the declaratory judgment statute does not confer jurisdiction by itself if jurisdiction would not exist on the face of a well-pleaded complaint brought without the use of 28 U.S.C. § 2201.").  To entertain an action under the Declaratory Judgment Act, a court must have a basis for federal subject matter jurisdiction independent of the Act.  *See Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671 (1950); *Guaranty Nat'l Ins. Co. v. Gates*, 916 F.2d 508, 511 (9th Cir. 1990).  Such an independent basis is lacking here.

Accordingly, the Court determines that Plaintiff has failed to establish this Court's subject matter jurisdiction.  Based on this ruling, the Court does not

reach Defendant's alternative grounds for dismissal, including standing, and dismisses Defendant's Counterclaim, at her request.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant Maureen McDonough's Motion and directs the Clerk of Court to close this case.

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAI'I, February 20, 2014.



Derrick K. Watson
United States District Judge

Association of Apartment Owners of Pomaikai v. McDonough;
CV 13-00254 DKW-KSC; ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF